**LAW OFFICE OF ROBERT A. TANDY, LLC**
ROBERT A. TANDY, ESQ. (RT 0387)
Mack-Cali Corporate Center
50 Tice Boulevard, Suite 363
Woodcliff Lake New Jersey 07677
(201) 474-7103
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LLOYD CASTILLO<br><br>Plaintiff,<br><br>vs.<br><br>SPECTRA EAST, INC; XYZ CORP., INC. (1-10); JOHN DOES (1-10); and JANE DOES (1-10)<br><br>Defendants. | Civil Action No.: 2:17-cv-7156 (SDW)(CLW)<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff, Lloyd Castillo ("Plaintiff"), by his attorneys, the Law Office of Robert A. Tandy, LLC., by way of Complaint against the Defendants, Spectra East, Inc.; XYZ Corp., Inc. (1-10); John Does (1-10); and Jane Does (1-10), alleges as follows:

**NATURE OF ACTION AND VENUE**

1.      This is an action pursuant to i) the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., to remedy unlawful retaliation and discharge; ii) common law retaliation and wrongful termination; and iii) intentional infliction of emotional distress.

2.      This matter was removed from State of New Jersey Superior Court, County of Bergen on the basis of diversity of citizenship.

3.      Plaintiff, Lloyd Castillo, was an "employee" of Defendant, Spectra East, Inc., within the meaning of CEPA N.J.S.A. 34:19-2(b).

4.   Defendant, Spectra East, Inc., was Plaintiff's "employer" within the meaning of CEPA, <u>N.J.S.A.</u> 34:19-2(a).

5.   XYZ Corp., Inc. (1-10), a corporation, was Plaintiff's "employer" within the meaning of CEPA, <u>N.J.S.A.</u> 34:19-2(a).

6.   ABC Corp., Inc. (1-10), a corporation, was Plaintiff's "employer" within the meaning of CEPA, <u>N.J.S.A.</u> 34:19-2(a)

7.   At all times relevant, John Does (1-10) and Jane Does (1-10) were individuals employed by Defendant Spectra East, Inc.

## STATEMENT OF FACTS

8.   In or around October 6, 2014, Plaintiff commenced employment with Defendant Spectra East, Inc. as the Director of Laboratory Operations.

9.   Upon information and belief, Defendant Spectra East, Inc. is a leading provider of clinical laboratory services, utilizing state-of-the-art analytical equipment, automated specimen processing and reporting applications to deliver rapid and reliable test results. Spectra also partners with government and academic organizations to supply central laboratory services for a variety of clinical trials worldwide.

10.   Upon information and belief, Spectra East, Inc. is a wholly-owned subsidiary of Fresenius Medical Care, the world's largest vertically integrated dialysis service provider.

11.   In his capacity as Director of Laboratory Operations, Plaintiff was responsible for, *inter alia*, directing all laboratory operations including, but not limited to, Clinical Laboratory, Chemistry, Hematology, Coagulation, Diagnostic Immunology, Microbiology, Molecular, Environmental testing, Pre-analytical and Post-analytical operations, and Clinical Research; Instrumental role and responsibility in the integration of a recently acquired clinical laboratory,

with over 150 new assays and various testing platforms without loss of patient quality or significant client base.

12.     In or around 2015/2016, Defendant Spectra East, Inc. integrated a majority of clinical laboratory testing of previously acquired Shiel Medical Laboratory ("Shiel"), a Brooklyn, New York based entity, into its Rockleigh, New Jersey operations.

13.     Although Shiel Medical Laboratory promoted itself as an entity committed to providing the highest quality laboratory testing to its clients in the medical community, Plaintiff discovered gross deviations from standard testing practices and failure to comply with federal and State laws and regulations.

14.     On its website, Shiel provides in part:

> Shiel's significant investment in Quality Assurance is designed to ensure the maintenance of the highest standards in all facets of laboratory service. Shiel employs a full-time Quality Assurance Coordinator with over twenty-five years of experience in clinical laboratory science and management. Shiel's sophisticated Laboratory Information System (LIS) technology is integrated throughout all aspects of the testing process, from specimen arrival to result notification. Constant monitoring and calibration of all laboratory instrumentation parameters and consistent review of quality control procedures and turnaround times maintain Shiel's impressively high level of reliability, efficiency and accuracy.

15.     From commencement of the integration process of testing from Shiel to the date of his termination of employment, Plaintiff repeatedly complained about violations of federal and State laws and regulations in the testing process.

16.     Specifically, in or around February 2016, Plaintiff complained to Nick Brownlee, then President of Defendant Spectra Labs relating to certain conduct and speech of Sheil's Medical Director, Patricia Romano, M.D.

17.     Mr. Brownlee advised Plaintiff that he would speak with Dr. Romano about her conduct and language.

18.     In or around March 2016, Plaintiff complained directly to Chinju Jani, General Manager and Vice President, about insufficient sample or "under-filled" tubes for coagulation testing, which resulted in specimen rejection and/or requests for redraw.

19.     At that time, Plaintiff complained that regulations require a specified plasma concentration of sodium citrate, which in turn controls the amount of ionized calcium available for clotting.

20.     Plaintiff complained that in an under-filled tube, the blood to citrate ratio is decreased, reducing the availability of ionized calcium and causing artificially prolonged clotting times.  By under-filling tubes, patient safety was in great risk because such sample tests were inaccurate.

21.     On or about March 25, 2016, Plaintiff complained to Dr. Romano and "Agnes" in Quality Control that Sheil's website was inaccurately describing the proper fill percentage of a tube.

22.     In or around July 2016, Plaintiff complained to Dr. Romano, representatives in the Quality Control Department, and Spectra Senior Management about utilizing the wrong containers to collect urine samples - - tubes that did not have the appropriate preservative to ensure the integrity of the sample.

23.     Between July 2016 and the time of his termination, Plaintiff continuously complained that Sheil's sales representatives were using the wrong tubes and adversely affecting the integrity of the testing process and patient care.

24. In or around December 2016, Plaintiff discovered that Sheil's operation in Brooklyn was supplying printer toner cartridges, which appeared to him, substantially over and above what is considered the normal volume of testing that the lab was performing for the particular clients receiving the toner cartridges.

25. In or around December 2016, Plaintiff complained directly to Peter Connelly, Fresenius' Compliance Officer.

26. Specifically, Plaintiff complained to Mr. Connelly that Plaintiff reasonably believed the sales practices of providing substantially more toner cartridges to clients who were not giving the company the reciprocal volume of testing violated the anti-kickback laws and regulations.

27. Additionally, between July 2016 and March 2017, Plaintiff complained directly to Dr. Romano and Mohammed Khan that Sales Representatives kept insisting that he accept and perform testing on mislabeled and misidentified patient samples.

28. As a direct and proximate result of Plaintiff complaining about what he reasonably considered and/or believed to be violations of federal and State regulations and laws, Plaintiff was subjected to repeated acts of retaliation including, but not limited to, demotion in title and responsibilities, loss of direct reports, elimination of his job duties, the creation of a nominal paper position having insignificant job responsibilities that were seemingly made up by the Company on a day to day basis, and having his former position posted for a new hire.

29. On or about March 15, 2017 at approximately 11:28 p.m., Plaintiff transmitted an email communication to Angela McClure in Human Resources complaining of feeling "harassed" in his work environment and retaliation.

30.     On or about March 15, 2017 at approximately 2:30 p.m. in the afternoon and hours after Plaintiff sent his email communication to Human Resources complaining of harassment and retaliation, Defendant Spectra East, Inc. terminated Plaintiff's employment.

31.     As a direct and proximate result of the above conduct, Plaintiff suffered and/or will continue to suffer substantial loss of income; diminishment of career opportunity; loss of self-esteem; disruption of his family life; physical and mental pain; emotional trauma and distress; pain and suffering; and other irreparable harm.

## COUNT ONE

### (Conscientious Employee Protection Act)

32.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 31 of the Complaint as if set forth at length herein.

33.     Defendants engaged in continuous and repeated retaliation against Plaintiff based on the allegations stated herein.

34.     Plaintiff experienced adverse employment actions against him as a result of his engaging in protected activity, which ultimately included a termination of employment.

35.     As a direct and proximate result Plaintiff suffered and continues to suffer substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other irreparable harm.

**WHEREFORE**, Plaintiff, Lloyd Castillo, prays for judgment against Defendants, as follows:

A.     For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.      For compensatory damages;

C.      For punitive damages;

D.      For emotional distress damages;

E.      For physical manifestations of pain and suffering;

F.      For attorneys' fees and costs of this action;

G.      For interest at the maximum legal rate on all sums awarded;

H.      For Consequential damages; and

I.      For such other and further relief as the Court deems just and proper.

## COUNT TWO

### (Intentional Infliction of Emotional Distress)

36.      Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 35 of the Complaint as if set forth at length herein.

37.      The conduct alleged above with respect to Plaintiff was intentional, outrageous in character, and so extreme as to go beyond the bounds of decency.

38.      By the alleged conduct described above, Defendants intentionally inflicted emotional distress on Plaintiff.

**39.**      As a direct and proximate result Plaintiff suffered and continues to suffer substantial loss of income and other pecuniary harm; diminishment of career opportunity; loss of self-esteem; disruption of his family life; emotional trauma and distress; physical manifestations of pain and suffering and other irreparable harm.

**WHEREFORE**, Plaintiff, Lloyd Castillo, prays for judgment against Defendants, as follows:

A.  For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.  For compensatory damages;

C.  For punitive damages;

D.  For emotional distress damages;

E.  For physical manifestations of pain and suffering;

F.  For attorneys' fees and costs of this action;

G.  For interest at the maximum legal rate on all sums awarded;

H.  For Consequential damages; and

I.  For such other and further relief as the Court deems just and proper.

## COUNT THREE

### (CEPA– Individual Liability)

40.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 39 of the Complaint as if set forth at length herein.

41.   Defendants John Does (1-10); and Jane Does (1-10) engaged in the above-described retaliatory conduct while acting within the scope of their employment.

42.   Defendants  John Does (1-10); and Jane Does (1-10) individually aided, abetted, incited, compelled and/or coerced the performance of the above unlawful employment practices within the meaning of CEPA.

43.   The above acts and practices of Defendants  John Does (1-10); and Jane Does (1-10) constitute unlawful employment practices within the meaning of CEPA.

44.   As a direct and proximate result of the above conduct, Plaintiff suffered and continues to suffer substantial loss of income; diminishment of career opportunity; loss of self

esteem; disruption of his family life; physical and mental pain; emotional trauma and distress; pain and suffering; and other irreparable harm.

**WHEREFORE**, Plaintiff, Lloyd Castillo, prays for judgment against Defendants, as follows:

A.    For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.    For compensatory damages;

C.    For punitive damages;

D.    For emotional distress damages;

E.    For physical manifestations of pain and suffering;

F.    For attorneys' fees and costs of this action;

G.    For interest at the maximum legal rate on all sums awarded;

H.    For Consequential damages; and

I.    For such other and further relief as the Court deems just and proper.

## COUNT FOUR

### (Common Law Wrongful Termination)

45.    Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 44 of the Complaint as if set forth at length herein.

46.    Plaintiff was performing his job at a level that met Defendants' legitimate expectations.

47.    Defendant's decision to terminate Plaintiff was in direct violation of public policy.

48.     As a direct and proximate result of the above conduct, Plaintiff suffered and continues to suffer substantial loss of income; diminishment of career opportunity; loss of self esteem; disruption of his family life; physical and mental pain; emotional trauma and distress; pain and suffering; and other irreparable harm.

**WHEREFORE**, the Plaintiff, Lloyd Castillo, demands judgment against the Defendant for the following relief:

A.     For money damages for all economic losses including, but not limited to, lost, past and future salary and fringe benefits;

B.     For compensatory damages;

C.     For punitive damages;

D.     For emotional distress damages;

E.     For physical manifestations of pain and suffering;

F.     For attorneys' fees and costs of this action;

G.     For interest at the maximum legal rate on all sums awarded;

H.     For Consequential damages; and

I.     For such other and further relief as the Court deems just and proper.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to Court Rule, <u>R.</u> 4:25-4, it is hereby asserted that Robert A. Tandy, Esq. is designated trial counsel for the trial of this action.

### DEMAND FOR TRIAL BY JURY

Plaintiff, Lloyd Castillo, herein demand a trial by jury on all issues.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Demand is hereby made that you disclose and make a copy to the undersigned of any insurance agreements or policies applicable to this action.

**LAW OFFICE OF ROBERT A. TANDY, LLC**
Attorney for Plaintiff

ROBERT A. TANDY, ESQ. (RT 0387)

Dated: October 17, 2017

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated and no other parties need to be joined in the above action.

**LAW OFFICE OF ROBERT A. TANDY, LLC**
Attorney for Plaintiff

ROBERT A. TANDY, ESQ. (RT 0387)

Dated: October 17, 2017